**In re Charles Thomas BOBROFF, a/k/a Charles T. Bobroff, a/k/a Donney Bobroff and Zachary Fae, Debtor.**

**Bankruptcy No. 81–01525G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 3, 1983.

**934**

David L. Segal, Philadelphia, Pa., for debtor, Charles Thomas Bobroff, a/k/a Charles T. Bobroff, a/k/a Donney Bobroff and Zachary Fae.

Samuel H. Becker, Andrew D. Bershad, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Continental Bank.

James O'Connell, Philadelphia, Pa., Chapter 13 Standing Trustee.

Jonathan H. Ganz, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for the Standing Trustee, James O'Connell.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue presented herein is whether we should grant a creditor's motion to convert a proceeding under chapter 13 of the Bankruptcy Code ("the Code") to one under chapter 7 based upon said creditor's averments that the debtor has unsecured debts in excess of $100,000.00 and does not have income sufficiently regular to fund a wage earner repayment plan. For the reasons stated herein we find the first averment meritorious, and will grant the motion to convert.

The facts of the case are as follows:[1] The debtor filed for relief under chapter 7 of the Code and shortly thereafter filed a praecipe converting the proceeding to one under chapter 13. A creditor, Continental Bank ("Continental"), then filed a motion to convert the case to chapter 7, alleging that the debtor was ineligible for relief under chapter 13.

The debtor owns a parcel of realty worth $125,000.00 which is encumbered by the following perfected security interests listed from highest priority to lowest: Home Unity Savings & Loan Association ("Home Unity") $58,600.00; Continental, $197,327.00;[2] and Girard Bank ("Girard") $12,300.00. Continental also holds a perfected security interest in certain goods of the debtor stored in an auction house which are worth $13,216.00, as well as an unperfected security interest in certain insured paintings which, allegedly, have since been stolen. The debtor is currently pursuing a claim against the insurance carrier for payment. Lastly, Continental's claim is secured by an unperfected security interest in a leasehold held, not by the debtor, but by a corporation, Fae Enterprises, Inc., the capital stock of which is wholly owned by the debtor.

Continental asserts that the debtor is not eligible for relief under chapter 13 due to the restrictions found in 11 U.S.C. § 109(e) which states as follows:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

Continental's contention that the debtor owes unsecured debts in excess of $100,000.00 requires us to total the debtor's aggregate unsecured claims. In the case at

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. The outstanding indebtedness owed to Continental was $205,000.00 until the debtor's automobile was sold for $9,673.00 and applied to reduce the indebtedness to $195,327.00.

bench this determination requires the use of 11 U.S.C. § 506(a). 3 Collier on Bankruptcy ¶ 506.01, at 502–2 (15th ed. 1982). This section states as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The purpose of this provision is expressed in the legislative history, which states as follows:

§ 506. Determination of secured status

Subsection (a) of this section separates an undersecured creditor's claim into two parts—he has a secured claim to the extent of the value of his collateral; he has an unsecured claim for the balance of his claim. "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case. Throughout the bill, references to secured claims are only to the claim determined to be secured under this subsection, and not to the full amount of the creditor's claim. This provision abolishes the use of the terms "secured creditor" and "unsecured creditor" and substitutes in their places the terms "secured claim" and "unsecured claim." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 356, *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787 at 6312. Since Home Unity holds the first encumbrance on the property, it is fully secured in the amount of $58,600.00. Continental holds a secured claim on the remainder of the value of the realty plus the value of the auction house items for a total of $79,616.00, and holds an unsecured claim for $117,711.00. Girard's claim is totally unsecured in the amount of $12,300.00. Thus, the total unsecured debts owed to Girard and Continental equal $130,011.00. Consequently, Continental has established a prima facie case for conversion by indicating that the debtor owes unsecured debts in excess of $100,000.00. The debtor controverts this by asserting that Continental's unperfected security in insurance proceeds of certain paintings allegedly stolen from the debtor and in a leasehold owed by Fae Enterprises, Inc., reduce Continental's unsecured claim by the value of these items and increase its secured claim by the same amount. Although unperfected security interests are not valid against the trustee in bankruptcy, the debtor asserts that under state law an unperfected security agreement is valid between the parties signing it. Consequently, the debtor contends that the security agreement would be valid against the debtor and would give Continental a secured claim in this proceeding. We find the debtor's argument meritless.[3]

■ The language of §§ 109(e) and 506(a) and the accompanying legislative history support Continental's position that the term "secured debts" used in § 109(e) does not include those which are unperfected. Since Continental's claim against the proceeds of the paintings and the leasehold are

---

3. On the issue of the insurance proceeds both parties in this action have relied upon *Ettinger v. Central Penn National Bank,* 2 B.R. 385 (E.D. Pa.1979) which is inapposite to the case at bench. As stated in that case: "The precise issue before the Court is whether monies received by the beneficiary of a fire insurance policy for damages to personal property, which was pledged as collateral under a security agreement and recorded in a financing statement, constitute 'proceeds' within the meaning of § 9–306 of the Uniform Commercial Code (1964 version) ('UCC') as adopted by the Pennsylvania legislature." *Id.* at 386–87. In *Ettinger* the security interest was perfected, while in this case the security interests at issue are unperfected.

unsecured, the value of these items will not reduce the debtor's unsecured indebtedness.

■ Section 1307(c)[4] of the Code provides for the conversion of a case from chapter 13 to chapter 7 or 11. This section provides that conversion to chapter 7 can be effected "for cause." Although the section enumerates several non-exhaustive examples of cause, no provision expressly provides for conversion due to the debtor's failure to meet the debt requirements of § 109(e). We hold that cause under § 1307 is sufficiently broad to authorize conversion when the unsecured debts of a chapter 13 debtor exceed $100,000.00. Consequently, we will grant Continental's motion to convert the case to a chapter 7 proceeding.

4. § 1307

(c) Except as provided in subsection (e) of this section, on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

  (1) unreasonable delay by the debtor that is prejudicial to creditors;

  (2) nonpayment of any fees and charges required under chapter 123 of title 28;

  (3) failure to file a plan timely under section 1321 of this title;

  (4) denial of confirmation of a plan under section 1325 of this title and denial of additional time for filing another plan or a modification of a plan;

  (5) material default by the debtor with respect to a term of a confirmed plan;

  (6) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title; and

  (7) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan.