**In re Harry MAGRAS.**

**In re Florie MAGRAS.**

**Bankruptcy Nos. 388–0011, 388–0012.**

United States Bankruptcy Court,
D. Virgin Islands,
D. St. Thomas and St. John.

July 30, 1991.

James S. Carroll, III, Asst. U.S. Atty., for The Small Business Adm'n.

Mark Roadarmel, Asst. U.S. Trustee, Ronald W. Belfon, for debtors.

OPINION

WILLIAM H. GINDIN, Chief Judge.

## I. Introduction

Presently before the court is the motion of The United States by the Small Business Administration ("SBA") to dismiss the chapter 13 petitions of the debtors, Harry and Florie Magras, or, in the alternative, to convert their cases to chapter 7 proceedings. For the reasons set forth below, the court will enter orders dismissing the chapter 13 petitions; however, the orders of dismissal will only become effective if the debtors fail to voluntarily convert to proceedings under either chapter 11 or chapter 7 within 14 days of their entry.

## II. Facts

The essential facts are not in dispute. Harry and Florie Magras filed voluntary chapter 13 petitions on October 7, 1988. Debtors' statements listed the SBA as a secured creditor in the amount of $263,-000.00. This indebtedness arose out of a mortgage loan secured by 56A–BB Kronprindsens Gade, St. Thomas, U.S. Virgin Islands. Accordingly, the SBA filed a proof of claim for $262,185.46.

On May 11, 1990, the SBA filed a motion to dismiss the petitions or to have the cases converted to chapter 7. Because the debtor has conceded that the mortgaged property has a market value of $57,000.00, the SBA asserted that the debtors' liquidated, noncontingent, unsecured obligations actually exceeded $100,000 in violation of 11 U.S.C. § 109(e). Alternatively, the SBA contended that the petitions should be dismissed as bad faith filings or that the stay should be lifted for cause since the plan cannot be confirmed.[1]

## III. Discussion

11 U.S.C. § 109 governs eligibility for relief under Title 11 of the United States Code ("the Code"). For purposes of analyzing the instant motion, § 109(e) is the operative subsection since it controls the availability of chapter 13. That subsection provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000.... may be a debtor under chapter 13 of this title.

Section 506(a) of the Code is equally as important to this court's analysis of these debtors' eligibility for chapter 13. Section 506(a) determines the amount of an allowed secured claim and provides that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

The SBA relies upon 11 U.S.C. § 506(a) to argue that the debtors have unsecured debts in excess of $100,000. The SBA claims that its debt is secured only to the amount of the value of the collateral and that the remainder of its claim is rendered unsecured. The SBA relies upon three cases to support its contention. *In re Day*, 747 F.2d 405 (7th Cir.1984); *In re Bobroff*, 32 B.R. 933 (Bankr.E.D.Pa.1983); *In re Ballard*, 4 B.R. 271 (Bankr.E.D.Va.1980).

In *Day*, the debtor listed unsecured debts of $65,000 and secured debts of $161,000. The schedules revealed that the collateral for $73,000 of the secured debt was accounts receivable which had no value. The Seventh Circuit determined that indebtedness to be unsecured because the accounts receivable were nonexistent and worthless. When added to the acknowledged $65,000 in unsecured debts, the debtor's unsecured

---

1. Because this court has determined that the debtors are ineligible for relief under Chapter 13 the alternative arguments advanced by the SBA will not be considered.

obligations exceeded $100,000. As a result, the debtor was not entitled to obtain relief under chapter 13.

In *Bobroff,* Judge Goldhaber converted a proceeding under chapter 13 to one under chapter 7 for failure to meet the eligibility requirements of § 109(e). The debtor owned real estate worth $125,000 which was encumbered by three perfected security interests in the amounts of $58,600, $197,327 and $12,300. No unsecured debts were scheduled. Nevertheless, the court, applying § 506(a), concluded that since the three "secured" loans totaling $268,227 were secured by collateral worth only $125,000, the debtor actually had unsecured debts in excess of $100,000.

Finally, the debtors in *Ballard* used § 506(a) to defeat a creditor's motion to dismiss. The debtors' schedules listed secured obligations in excess of $350,000. After the bank moved to dismiss for failure of the debtor to meet the eligibility requirements, the court was confronted with a § 109(e) problem. The court determined that the value of the collateral was less than $350,000 and held that "to the extent the debt remains unsecured as a result of [§ 506(a)] the unsecured portion becomes a part of the debt not represented to be secured by any interest in property of the debtor." *Ballard,* 4 B.R. at 275. Since the total of the unsecured portion under § 506(a), when added to the scheduled unsecured debt, was less than $100,000 the court concluded that the debtor met the qualifications of § 109(e).

The debtors, however, rely on *In re Morton,* 43 B.R. 215 (Bankr.E.D.N.Y.1984) to support their argument that their chapter 13 petitions should not be dismissed. In *Morton* a creditor moved, pursuant to § 109(e), to dismiss the debtor's chapter 13 case on the ground that the debtor's unsecured debts exceeded $100,000. The debtor's petition and accompanying schedules listed secured debts in excess of $300,000 and the value of her sole asset as $110,000. The *Morton* court held that the portion of allowed claim rendered unsecured pursuant to § 506(a) should not be considered an unsecured debt in a determination under

§ 109(e). It reasoned that because the § 109(e) determination must be made before all claims and objections thereto are determined, or even filed, the court is required to make the finding based upon the petition as filed. The instant debtors similarly contend that the unsecured portion of their debt should not be used in making a determination under § 109(e) since such portion has not yet been fixed and that they are, accordingly, eligible for chapter 13 relief.

This court has also considered two important, recent decisions by the Court of Appeals for the Third Circuit concerning the application of § 506(a) and a recent decision by the United States Supreme Court on the definition of a claim which are relevant to this decision.

In *Wilson v. Commonwealth Mortg. Corp.,* 895 F.2d 123 (3d Cir.1990), the debtors brought an adversary proceeding in which they sought to limit the mortgagee's allowed secured claim to the fair market value of the collateral, their principal residence. In holding that the unsecured portion of the mortgagee's claim may be modified, the court stated that § 506(a) defines an allowed secured and an allowed unsecured claim and noted that the Supreme Court had recently explained that § 506(a) "provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *Wilson,* 895 F.2d at 125 (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989)).

The second recent case decided by the Court of Appeals is *Gaglia v. First Fed. Sav. & Loan Ass'n,* 889 F.2d 1304 (3d Cir.1989). In *Gaglia,* chapter 7 debtors moved to avoid liens against their residence. The SBA objected and argued that § 506(a) did not apply where the debtor lacked equity in the property. The court, however, rejected the creditor's assertion and held that § 506(d) allowed the debtors to void that portion of the lien secured by real property which exceeded its value, even though the property had not been administered by the estate and the debtors

lacked equity in it. The court reasoned that if § 506(a) were interpreted as the creditor suggested, it would conflict with the plain meaning of § 506(d). Furthermore, the court noted that in allowing the debtors to use § 506 to avoid the SBA's lien, the SBA would not be prejudiced since it would be in the same position as if the property had been liquidated. Finally, the court concluded that applying § 506 would further the Code's policy of providing the debtor with a fresh start.

In *Johnson v. Home State Bank*, ―― U.S. ――, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), the Supreme Court was asked to determine whether the undischarged *in rem* obligation of a discharged chapter 7 debtor was a claim for purposes of a subsequent chapter 13 case. In determining that the surviving mortgage interest is a claim, Justice Marshall stated that "[w]e have previously explained that Congress intended by th[e] language [of 11 U.S.C. § 101(4)] to adopt the broadest available definition of 'claim'." *Id.* at ―― ― ――, 111 S.Ct. at 2154. Consequently, this court must also adopt a broad construction of that term.

This court finds the reasoning of the Supreme Court in *Johnson*, the Third Circuit in *Wilson* and *Gaglia* and the majority of other bankruptcy courts which have considered the relationship between § 109(e) and § 506(a) convincing. The *Morton* opinion is a minority view; this court is not persuaded by its analysis and declines to follow it. Indeed, § 506(a) does split a secured creditor's claim into secured and unsecured components for the purposes of making a determination under § 109(e).

In the instant case the debtors admit that they owe $263,000 to the SBA, while the property securing this indebtedness is valued at only $57,000. Applying § 506(a), this court finds that the unsecured portion of the Magras' debt is in excess of $200,000. Accordingly, pursuant to § 109(e), the debtors are not eligible for relief under chapter 13.

### IV. Conclusion

For the reasons set forth above in the opinion of the court, the debtors' chapter 13 petitions shall be dismissed unless they voluntarily convert to cases under either chapter 11 or chapter 7 within 14 days of entry of the orders of dismissal.